IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOE MILLER, et al., individually and o/b/o others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 18-00687-CV-W-ODS ) ) |
| O'REILLY AUTOMOTIVE, INC., et al., | ) ) ) |
| Defendants. | ) |

**ORDER AND OPINION (1) GRANTING THE PARTIES' JOINT MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, (2) GRANTING PLAINTIFFS' APPLICATION FOR INCENTIVE AWARDS FOR CLASS REPRESENTATIVES AND FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND (3) DISMISSING MATTER WITH PREJUDICE**

Pending are the parties' Joint Motion for Final Approval of Proposed Class Action Settlement (Doc. 68) and Plaintiffs' Application for Incentive Awards for Class Representatives and for Award of Attorneys' Fees and Expenses (Doc. 66). For the following reasons, both motions are **GRANTED**.

## I. BACKGROUND

In July 2018, Plaintiffs Joe Miller and Kenny Higgs, individually and purportedly on behalf of others similarly situated, filed a lawsuit the Circuit Court of Jackson County, Missouri against Defendants O'Reilly Automotive, Inc.; Ozark Automotive Distributors, Inc.; O'Reilly Automotive Stores, Inc.; and Omni Specialty Packaging, LLC. Doc. 1-1, at 2-21. Plaintiffs' claims arise from Defendants' marketing and advertising of the O'Reilly 303 Tractor Hydraulic Fluid, which Plaintiffs allege to be false, deceptive, and misleading. *Id.* In August 2018, Defendants removed the matter to this Court. Doc. 1. In December 2018, the Court granted Plaintiffs' unopposed request to join additional parties and file an amended complaint. Docs. 32, 36, 37.

In the Amended Complaint, in which Ray Bieri and Don Sherwood became plaintiffs, the allegations against Defendants are summarized in the first paragraph:

> Defendants…have deceptively labeled, marketed and sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303" designation is obsolete and 303 specifications have not been available for over forty (40) years. [Defendants] have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they were selling did not meet all listed manufacturer specifications and did not contain the anti-wear and protective properties required in Tractor Hydraulic Fluid.

Doc. 38, ¶ 1. Plaintiffs allege claims under the Missouri Merchandising Practices Act and also bring claims of breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, fraud, negligent misrepresentation, negligence, and unjust enrichment. *Id*. ¶¶ 81-155.

In March 2019, the parties sought preliminary approval of a proposed class action settlement. Docs. 62-64. In April 2019, the Court granted the request and entered an order preliminarily approving the proposed class action settlement ("Preliminary Approval Order"). Doc. 65. Therein, the Court conditionally certified the Settlement Class as follows:

> All persons and other entities who purchased O'Reilly 303 Tractor Hydraulic Fluid in Missouri at any point in time from July 20, 2013 to present, excluding those who purchased for resale. Also excluded from the Settlement Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees, and their immediate family members; as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

*Id*. at 2. In addition, the Preliminary Approval Order, *inter alia*, (1) found the settlement agreement ("the Agreement") terms were fair, reasonable, and adequate; (2) concluded the requirements under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure were satisfied; (3) appointed class counsel, class representatives, and the settlement administrator; (4) determined the

parties' proposed notice plan complied with Rule 23, was reasonable, and constituted due, adequate, and sufficient notice; (5) approved the method, manner, and timing of notice; (6) established the procedures for opting out and objecting to the settlement, and (7) scheduled a Final Approval Hearing. *Id*. at 2-11.

Now pending are the parties' Joint Motion for Final Approval of Proposed Class Action Settlement and Plaintiffs' Application for Incentive Awards for Class Representatives and for Award of Attorneys' Fees and Expenses. On December 16, 2019, the Court held the Final Approval Hearing, during which counsel for all parties appeared and provided information and legal arguments related to the pending motions. No opposition to either motion was filed, and the time for doing so has passed. L.R. 7.0(c)(1). The motions are now ripe for consideration

## II. DISCUSSION

The Court will first address class certification and settlement approval Then, the Court will turn to the requests for incentive awards, attorneys' fees, and expenses.

### A. <u>Class Certification</u>

To grant final certification of this class action, the Court must find the putative class action meets the four requirements found in Rule 23(a) of the Federal Rules of Civil Procedure and fits within a category of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).

#### (1) Rule 23(a) Requirements

Pursuant to Rule 23(a), all class actions must establish (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613.

Numerosity is met when Plaintiffs demonstrate the class is so large that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1). The parties represent, and no one has disputed, there are approximately 20,000 Settlement Class members.[1] Doc. 64, at 4. Thus, the numerosity requirement has been satisfied.

Commonality is satisfied when a legal question "substantially related" to resolving the case links the class members. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Each Settlement Class member shares a claim that Defendants allegedly marketed and sold tractor hydraulic fluid in a deceptive and misleading manner, and they seek economic damages resulting from Defendant's alleged actions. If the matter was tried, the same evidence would support each class member's prima facie case. Thus, the commonality requirement has been satisfied.

Typicality is "met so long as the other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. The named plaintiffs' claims are typical to the Settlement Class members' claims. They allege Defendants marketed and sold hydraulic fluid in a deceptive and/or misleading manner, and as a result, they are entitled to damages. The Court finds the typicality requirement has been satisfied.

For adequacy of representation, class representatives must "fairly and adequately protect the interests of the class," have "common interests with the members of the class," and "vigorously prosecute the interests of the class through qualified counsel." Fed. R. Civ. P. 23(a)(4); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982) (citation omitted). Here, the class representatives allege the same claims and same injuries as the absent Settlement Class members. There is no evidence that the class representatives have conflicts of interest with the absent Settlement Class members or they were antagonistic toward the absent Settlement Class members.

---

[1] The Agreement (Doc. 62-1) is incorporated by reference in this Order, and all capitalized terms in this Order shall have the meanings set forth in the Agreement.

4

Moreover, the class representatives, through class counsel, have vigorously prosecuted the class's interests. Class counsel, who are experienced, competent, and highly qualified, fairly and adequately represented and protected the interests of the Settlement Class members.

Thus, the Court finds the class representatives and class counsel adequately represented the Settlement Class members. The Court approves and appoints Joe Miller, Kenny Higgs, Raymond Bieri, and Don Sherman as class representatives. The Court approves and appoints Tom Bender, Dirk Hubbard, Gene Graham, William Carr, Bryan White, and Clayton Jones as class counsel.

For the foregoing reasons, the Court finds the Rule 23(a) requirements have been met.

### (2) Rule 23(b) Requirement

Plaintiffs must also establish one of the subparts of Rule 23(b) is satisfied. Rule 23(b)(3), on which Plaintiffs rely, is met if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court already concluded questions of law and fact are common among the Settlement Class members. *See supra*, section II(A)(1). The Court also finds these common questions of law and fact predominate over any questions affecting individual Settlement Class members. Further, this class action is superior to other methods of litigating these claims (e.g., filing 20,000 lawsuits), and fairly and efficiently adjudicates the controversy. Thus, Rule 23(b)(3) is satisfied.

Based on the foregoing findings and pursuant to Rule 23, the Court finally certifies a class action on behalf of the following:

> All persons and other entities who purchased O'Reilly 303 Tractor Hydraulic Fluid in Missouri at any point in time from July 20, 2013 to present, excluding those who purchased for resale. Also excluded from the Settlement Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants;

Defendants' officers, directors, agents, employees, and their immediate family members; as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

### B. Notice to Settlement Class Members

Rule 23(c)(2)(B) requires class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice…need only be as directed by the district court…and reasonable enough to satisfy due process." *DeBoer*, 64 F.3d at 1176.

In its Preliminary Approval Order, the Court prescribed the form, content, manner, and timing of notice to Settlement Class members. Doc. 65, at 4-7. Based on the parties' representations, the executed notice plan complied with the Court's Order. After Defendants identified the names and last known addresses of many Settlement Class members, that information was provided to the settlement administrator. The settlement administrator obtained addresses for 14,988 (of the 20,000) Settlement Class members. Doc. 68-2, at 2.

In May 2019, the settlement administrator mailed notice to 14,988 Settlement Class members. *Id*. at 2-3. The mailing included the Long Form Class Notice, a Correction Form, and a Purchase Data Form, which included the total purchases made and the estimated distribution amount. *Id.* Of the mailed notices, 1,373 were returned. *Id.* at 4. Thirty-six returned notices included forwarding addresses to which another notice was sent. *Id*. Alternative addresses were located for 566 of the returned mailings, and notice was sent to these addresses. *Id*. After these efforts, 772 of the 14,988 identified Settlement Class members did not receive a mailed notice. *Id*.

The settlement administrator caused the Summary Class Notice to be printed in twelve Missouri publications in May 2019. *Id*. at 3. It also established a website, mailing address, and toll-free number for the settlement. *Id*. at 3-4.

6

Case 4:18-cv-00687-ODS   Document 76   Filed 12/16/19   Page 6 of 14

Eighty-eight Correction Forms were mailed or faxed to the settlement administrator. *Id.* at 5. Seventy-two Correction Forms were duplicative of information collected by Defendants. *Id.* Of the remaining sixteen, the corrected purchase data was accepted by the settlement administrator. *Id.*; Doc. 72-2, at 3; Doc. 73-2, at 3. Thus, all Settlement Class members who sent a Correction Form will receive a settlement distribution. Doc. #68-2, at 5.

Six claims were received "via U.S. mail for fax." *Id.* The settlement administrator accepted three claims and rejected three claims. *Id.*; Doc. 72-2, at 2-3; Doc. 73-2, at 2-3. For the accepted claims, the Settlement Class members will receive a settlement distribution. Doc. 68-2, at 5. Regarding the rejected claims, the settlement administrator sent letters to the claimants stating the basis for the rejection and inviting the claimants to submit additional information to support their claims within thirty days. *Id.*

Forty-four claims were submitted via the settlement website. *Id.* Thirty-three claims were duplicative of information collected by Defendants, and those Settlement Class members will receive a settlement distribution. *Id.* Nine claims were accepted by the settlement administrator, and those Settlement Class members will receive a settlement distribution. *Id.* at 6; Doc. 72-2, at 3; Doc. 73-2, at 3. For the two rejected claims, the settlement administrator sent letters to the claimants stating the basis for the rejection and inviting the claimants to submit additional information to support their claims within thirty days. *Id.*; Doc. 72-2, at 2; Doc. 73-2, at 2.

The settlement administrator has not received any objections to the settlement. *Id.* at 5. In addition, no objections were filed with the Court. The settlement administrator received eight requests to opt out of the settlement. *Id.*; Doc. 72-1; Doc. 73-1.

Based on the foregoing, the Court finds the notice provided was reasonable; constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and met the

requirements of due process and Rule 23. The Court also finds the manner of notice was the best practicable notice under the circumstances and was reasonably calculated to apprise Settlement Class members of this matter. Finally, the Court concludes individual notice was sent to all Settlement Class members who could be identified through reasonable efforts.

### C. Approval of Settlement

Now, the Court must determine whether it should approve the proposed class action settlement of $980,000. A "class may be settled…only with the court's approval." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (citing Fed. R. Civ. P. 23(e)). If the settlement binds the Settlement Class members, "the court may approve it only after a hearing and on finding that it is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Courts must "ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005) (citation omitted). To determining whether a settlement is fair, reasonable, and adequate, the Court considers (1) the merits of the plaintiffs' case weighed against the settlement terms; (2) Defendants' financial condition; (3) complexity and expense of further litigation; and (4) amount of opposition to the settlement. *Marshall*, 787 F.3d at 508 (citations omitted). "The single most important factor…is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (citation omitted).

### (1) Merits of Case and Terms of Settlement

Plaintiffs recognize the risks and uncertainty of litigation. While confident they would have prevailed at trial, Plaintiffs concede there is a risk of not recovering any monetary relief, particularly in light of Defendant's "several, strong defenses," if the litigation were to continue. Doc. 69, at 10. But, with the settlement, more than Settlement Class members will receive

immediate relief in the form of a payment equal to forty-five percent of the estimated price paid for the tractor hydraulic fluid. *Id*. at 11. If litigation continued, monetary relief, if obtained, would not be realized for several years. In addition, Defendants have agreed to refrain from selling any tractor hydraulic fluid in Missouri labeled as "303" or as meeting "303" specifications. *Id*. at 12. Finally, Defendants agreed to pay class counsel's fees and expenses and the class representatives' incentive awards. Doc. 62-1, at 11-12. These amounts will not reduce the Class Settlement Fund.

### (2) Defendants' Financial Condition

There is no indication that Defendants' financial conditions are such that they are unable to pay any judgment entered in this case.

### (3) Complexity and Expense of Further Litigation

The parties admit future proceedings "would be protracted and expensive, involve highly complex legal and factual issues" including liability and damages and "would involve substantial uncertainties, delays, and other risks inherent in litigation." Doc. 69, at 13. Given the claims, class size, and the factual and legal questions, the Court agrees with the parties' assessment.

### (4) Opposition to Settlement

There are approximately 20,000 Settlement Class members. To date, no objections have been received or filed. Doc. 68-2, at 5. Eight Settlement Class members requested to opt out of the settlement. Doc. 69, at 13; Doc. 68-2, at 5.

Based on the foregoing, the Court finds the Agreement (Doc. 62-1) was reached following meaningful discovery and investigation conducted by class counsel in good faith and as a result of arm's length negotiations between the parties. The Court finds the parties' settlement is fair, reasonable, and adequate, and in the best interests of the parties and the Settlement Class members

when balanced against the risks and benefits of further litigation. The Court approves the parties' settlement in the amount of $980,000.

### D. Application for Class Representatives' Incentive Awards

Plaintiffs seek approval of $5,000 incentive awards to each class representative: Joe Miller, Kenny Higgs, Raymond Bieri, and Don Sherwood. Doc. 66, at 1-2; Doc. 67, at 7-8. According to Plaintiffs, the class representatives "spent a substantial amount of time in meeting and talking with Class Counsel, assisting in development of the case, reviewing pleadings, gathering documents,…responding to document requests and interrogatories, attending mediation, and preparing for depositions." Doc. 67, at 7; Doc. 67-1, at 2. These service awards will be paid separately by Defendants and will not be deducted from the Class Settlement Fund. Doc. 66, at 1; Doc. 67, at 7. No one objected to Plaintiffs' application for incentive awards.

The Eighth Circuit, this Court, and other courts have determined class representative service awards and the amount requested by Plaintiffs are appropriate. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (finding $2,000 class representative awards were appropriate); *Thornburg v. Open Dealer Exch., LLC*, No. 17-6056-ODS, 2019 WL 3291569, at *3 (W.D. Mo. July 22, 2019) (approving $15,000 class representative award); *Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 220 (W.D. Mo. 2017) (awarding $2,500 to each class representative); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (awarding $10,000 to the named plaintiffs); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (awarding $5,000 to class representatives). The Court finds Plaintiffs' request is reasonable and approves incentive award payments in the amount of $5,000 to each class representative with Defendants directly paying the incentive awards to the class representatives.

### E. Application for Attorneys' Fees and Costs

### (1) Attorneys' Fees

Class counsel asks the Court to award attorneys' fees in the amount of $245,000. Doc. 66, at 2; Doc. 67. When certifying a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court finds an award of attorneys' fees is authorized by Rule 23(h). Two methods are used to award attorneys' fees: the lodestar method and the percentage of the benefit method. *Galloway v. The Kan. City Landsmen, LLC*, 833 F.3d 969, 972 (8th Cir. 2016). The Court may choose what method to apply. *Id*. (citation omitted). Class counsel maintains the requested fees are fair and reasonable under either method but suggest the percentage of the benefit approach is appropriate.

Under the "percentage of the benefit" method, the attorneys are awarded "some fraction of the common fund" the attorneys obtained in the litigation, similar to a contingent fee arrangement. *Johnston*, 83 F.3d at 246. To determine the reasonableness of a fee award, courts consider several factors including but not limited to time and labor required; novelty and difficulty of legal questions; degree of success or results obtained; required skill to handle the case; whether the fee is fixed or contingent; experience, reputation, and ability of the attorneys; and awards in similar cases. *See Keli v. Lopez,* 862 F.3d 685, 701 (8th Cir. 2017) (citations omitted); *Phillips v. Mo.*, No. 97-CV-748, 2000 WL 33910092, at *1 (W.D. Mo. Mar. 29, 2000) (citations omitted).

Class counsel spent more than 900 hours on this case and "hundreds of hours" investigating the industry as a whole. Doc. 67, at 5; Doc. 67-1, at 4-5. The time was spent investigating facts, conducting legal research, reviewing 30,000 pages of documents, drafting pleadings, conducting discovery, preparing for depositions, communicating with opposing counsel, requesting

11

Case 4:18-cv-00687-ODS   Document 76   Filed 12/16/19   Page 11 of 14

information from third parties, meeting with class representatives, meeting with Defendants' counsel, retaining and consulting with experts, and mediating. Doc. 67, at 5; Doc. 67-1, at 4-5.

Because of the settlement, more than 15,000 purchasers of the product at issue will benefit. Doc. 67-1, at 5. Each Settlement Class member will receive a payment equal to forty-five percent of the estimated price paid for the hydraulic fluid. Doc. 69, at 11. The settlement administrator estimates $967,000 of the $980,000 Class Settlement Fund will be distributed. Doc. 68-2, at 6.[2] *Id*. Thus, class counsel obtained a concrete and substantial benefit for Settlement Class members.

Also, the parties negotiated and proposed a fair, reasonable, and adequate settlement. Doc. 62-1, at 12. The fee award was negotiated by attorneys experienced and knowledgeable in these types of matters. *Id*. Defendants agreed to directly pay class counsel's fees, and that amount will not reduce any benefit to Settlement Class members. *Id*.

The requested fee award is reasonable and characteristic of other awards in similar class actions. *See*, *e.g.*, *Huyer*, 2016 WL 640771, at *1-3 (finding the district court did not abuse its discretion in awarding attorneys' fees equivalent to one-third of the settlement fund); *In re Life Time Fitness, Inc.*, 847 F.3d at 622-24 (affirming court's fee award of twenty-eight percent of the settlement fund); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) (finding an award of fees equivalent to twenty-four percent of the monetary benefits was reasonable); *In re Xcel Entergy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 997-99 (D. Minn. 2005) (awarding fees in the amount of twenty-five percent of the settlement fund). Class counsel's fees

---

[2] This amount includes the initial Settlement Distribution Amount and a pro rata increase for Settlement Class members after a payment of $11,500 to the settlement administrator for partial reimbursement of reasonable costs, fees and expenses, and a payment of $1,500 to the settlement administrator for tax-related expenses associated with the Class Settlement Fund. Doc. 62-1, at 16, 27; Doc. 65 at 5; Doc. 68-2, at 6. The remainder of the settlement administrator's fees and costs, which are nearly $50,000, will be paid by Defendants. Doc. 62-1, at 16; Doc. 68-2, at 7; Doc. 69, at 5. Pursuant to the Agreement, any money remaining in the Class Settlement Fund after final distribution will be paid to the parties' designated *cy pres* recipient (Legal Aid of Western Missouri). Doc. 62-1, at 26; Doc. 68-2, at 7.

in the amount of $245,000 equate to twenty-five percent of the Class Settlement Fund, and therefore, is reasonable and characteristic of other awards in class actions. For the foregoing reasons, the Court approves Plaintiffs' request for attorneys' fees in the amount of $245,000, which will be paid directly by Defendants.

### (2) Costs and Expenses

Class counsel also seeks $25,000 for costs and expenses. Doc. 67, at 1; Doc. 67-1, at 6. Costs and expenses include a filing fee, service fees, mediation fee, mediation expenses, parking, lodging, mileage, consulting fee, expert retainer, and document management hosting. Class counsel incurred $26,880.15 in costs and expenses, but recovery of $25,000, pursuant to the Agreement, which limits recovery to $25,000. Doc. 62-1, at 12; Doc. 67-12, at 6. No one has objected to class counsel's request. The Court finds these costs and expenses were reasonable and necessary, and awards class counsel $25,000 for costs and expenses, which will be paid directly by Defendants.

### III. CONCLUSION

For the reasons stated above, the Court finds and orders the following:

(1) The parties' Joint Motion for Final Approval of Proposed Class Action Settlement (Doc. 68) is **GRANTED**.

(2) The Court approves the parties' settlement in the amount of $980,000.

(3) Plaintiffs Joe Miller, Kenny Higgs, Ray Bieri, and Don Sherwood are appointed as class representatives, and Plaintiffs' request for a $5,000 incentive award for each class representative is **GRANTED**. The incentive awards will be paid by Defendants, and incentive awards will not be paid from the Class Settlement Fund.

(4) Thomas Bender, Dirk Hubbard, Gene Graham, William Carr, Bryan White, and Clayton Jones are appointed as class counsel.

(5) Class counsel's application for $245,000 in attorneys' fees and $25,000 in costs and expenses is **GRANTED**. The attorneys' fees, costs, and expenses will be paid by Defendants, and the fees, costs, and expenses will not be paid from the Class Settlement Fund.

(6) Pursuant to the Agreement, money remaining in the Class Settlement Fund after final distribution will be paid to the parties' designated *cy pres* recipient, Legal Aid of Western Missouri.

(7) The parties are directed to consummate the Agreement.

(8) Upon the Effective Date, the Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class members.

(9) The Agreement is binding on all parties and Settlement Class members.

(10) Those who opted out of the settlement (Doc. 72-1 and Doc. 73-1) are deemed not to be Settlement Class members and do not release their claims against the Released Parties.

(11) Pursuant to the Agreement, the Court retains jurisdiction over the parties, including all Settlement Class members, as well as matters regarding interpretation, administration, implementation, effectuation, and enforcement of the Agreement.

(12) Pursuant to the Agreement, this matter is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                   /s/ Beth Phillips
                                      BETH PHILLIPS, CHIEF JUDGE
Date: December 16, 2019           UNITED STATES DISTRICT COURT